W.O.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00795-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Antonio De Jesus Sanchez-Murillo, | |
| Defendant. | |

Before the Court is Defendant's Motion to Dismiss the Sole Count Against Him (Doc. 12), the Government's Response (Doc. 14), and Defendant's Reply (Doc. 15). For the following reasons, the motion will be denied.[1]

**I.    Background**

In April 2001, Defendant, a citizen of Mexico, came to the United States. (Doc. 12 at 3.) In April 2006, Defendant was convicted of two counts of sale of dangerous drugs and one count of attempted possession of dangerous drugs for sale in violation of A.R.S. section 13-3407 in Maricopa County Superior Court. (Doc. 12 at 4.) On April 3, 2006, Defendant was sentenced to five years imprisonment for the two counts of selling drugs and four years' probation for the attempted possession count. (Doc. 12-3 at 2.) On April 7, 2006, Defendant was served with a Notice of Intent (the "NOI"). (Doc. 12-4 at 3.) Defendant acknowledged the NOI and wished not to contest or request withholding of removal. (Doc. 12-4 at 3.) On April 10, 2006, Defendant was ordered removed. (Doc. 12-2 at 2.) After

---

[1] The hearing on this matter was set for August 15, 2019 at 10 a.m. At that time, both parties were present, and the Court heard oral argument. (*See* Minute Entry 17.)

completing his sentence, Defendant was deported on October 5, 2009. (Doc. 12 at 4.)

At some point after he was deported in 2009, Defendant returned to the United States. On May 15, 2019, Defendant was jailed in Maricopa County by the Gilbert Police Department. (Doc. 1 at 2.) Consequently, on May 17, 2019, Defendant was charged, in this case, with illegal reentry in violation of 8 U.S.C. sections 1326(a) and (b)(1). (Doc. 1.)

## II. Discussion

Defendant argues that he was not deportable as charged in this case because his "convictions under Ariz. Rev. Stat. § 13-3407 were *not* controlled substance offenses under the federal definition in 8 U.S.C. § 1101(a)(43)(B) and therefore *not* aggravated felonies under 8 U.S.C. § 1227(a)(2)(A)(iii)." (Doc. 12 at 3.) He argues that, because the Arizona statute is categorically broader than the federal definition of controlled substance offenses and is indivisible by drug type, he is not an aggravated felon and could not be removed. (Doc. 12 at 3, 5-6.) The Government concedes that the Arizona statute at issue, A.R.S. sections 13-3407 and 13-3401, is overbroad because "it criminalizes the sale of certain drugs listed in A.R.S. § 13-3401, which are not included in the equivalent federal statute." (Doc. 14 at 2.) However, the Government argues that the Arizona statute is divisible because (1) "Arizona juries must make a unanimous finding regarding the type of drug involved in the offense"; (2) a defendant may receive separate punishments for different types of drugs; and (3) Defendant's conviction documents, which identify methamphetamine as the sole drug used in this case, supports the proposition that drug type is an element and not a means. (Doc. 14 at 2, 5-6.)

## III. Analysis

### A. Legal Standard

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has the right to bring a collateral attack challenging the validity of his underlying removal order, because that order serves as a predicate element of his conviction." *United States v. Mendez-Bello*, No. 18-CR-3676-GPC-1, 2018 WL 6649512, at *1 (S.D. Cal. Dec. 19, 2018) (citing *United States v. Ochoa*, 861 F.3d 1010, 1014 (9th Cir. 2017)). To collaterally challenge pursuant

to Section 1326(d), "the defendant must demonstrate that he (1) has exhausted all administrative remedies available to appeal the deportation order; (2) the underlying deportation proceedings at which the order was issued improperly deprived him of judicial review; and (3) the deportation order was fundamentally unfair." *Id.* (citing 8 U.S.C. § 1326(d); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)). "An underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying [removal] proceeding, and (2) he suffered prejudice as a result of the defects." *Id.* (citing *Ubaldo-Figueroa*, 364 F.3d at 1048). The defendant bears the burden of proving all the Section 1326(d) elements." *Id.* (citing *Ochoa*, 861 F.3d at 1019).

To determine whether a state offense may be a basis for removability under a federal offense, a court first looks to whether the applicable state statutes are categorical matches to the generic federal offenses. *United States v. Martinez-Lopez*, 864 F.3d 1034, 1038 (9th Cir. 2017) (en banc). If the statute is broader than the federal offense, then the state offense is not a categorical match. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (stating that, in applying the categorical approach, a court will "focus solely on whether the elements of the crime of conviction sufficiently match the elements of [the] generic [federal offense], while ignoring the particular facts of the case."). If the court finds there is no categorical match, then it will determine whether the state statute is divisible. *Id.* at 2249; *Descamps v. United States*, 570 U.S. 254, 257 (2013). To determine whether a statute is divisible, the court looks first to controlling state law to see if a controlling state court decision has "definitively answer[ed] the question." *Mathis*, 136 S. Ct. at 2256. If not, then the court will look to whether the state statute sets out alternative elements of what are effectively separate crimes, rather than merely describing different "means" for accomplishing a single crime. *Martinez-Lopez*, 864 F.3d at 1038-39; *see Mathis*, 136 S. Ct. at 2256.

If the state statute is overbroad and indivisible, the court's inquiry ends because "a conviction under an indivisible, overbroad statute can never serve as a predicate offense."

3

*Almanza-Arenas v. Lynch*, 815 F.3d 469, 475 (9th Cir. 2016) (en banc). If not, then the court will apply the modified categorical approach. *Martinez-Lopez*, 864 F.3d at 1039. In doing so, the court will "peek" into the defendant's conviction documents "for the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*, 136 S. Ct. at 2256-57 (internal citations omitted).

### B.   Discussion

The parties agree that A.R.S. section 13-3407 is overbroad because it criminalizes substances that are not on the federal controlled substance lists. (Doc. 14 at 2.) The parties dispute, however, whether the Arizona statute is divisible by drug type. To answer that question, the Court first looks to whether any controlling state law has *definitely* addressed this issue—the Court finds that it has not. The Court is unpersuaded by Defendant's argument that *United States v. Salinas*, 887 P.3d 985, 987 (Ariz. 1994), "definitely resolved the means-versus-elements question in favor of indivisibility." (Doc. 15 at 4.) The non-binding Ninth Circuit cases Defendant cites to for support of his argument are similarly unpersuasive.

*Yepez-Vargas v. Barr*, No. 17-72070, 2019 WL 2157438, at *1 (9th Cir. May 17, 2019) (unpublished) simply states, without any discussion, that A.R.S. section 13-3408(A)(7), a similar statute to the one at issue here, is indivisible "because the statute lists alternative means of committing the same offense," and cites to *Salinas* for a recitation of elements needed to prove possession of a narcotic for sale. Not surprisingly, that court also cites to *State v. Castorina*, No. 1 CA-CR 08-0816, 2010 WL 2450117, at *4 (Ariz. Ct. App. June 17, 2010) (unpublished), to supplement the assertion that the statute is indivisible by referencing the Arizona Court of Appeal's holding that "neither our statutes nor case law require the state to prove that defendant knew which particular drug defined under our laws as a 'dangerous' drug or 'narcotic' drug he knew he possessed." *Id.* First, it is unclear whether the *Yepez* court cited *Salinas* and *Castorina* for the proposition that those are "controlling" state law cases definitely answering this question or whether the court had moved on to the next step of determining divisibility (because there was no controlling

4

case law). While *Salinas* could stand for controlling law, *Castorina* cannot, as it is unreported. Second, *Castorina* was specifically addressing the issue of whether a defendant needed to have knowledge that the substance was a narcotic, which is different than an inquiry into whether the drug was, in fact, a narcotic. 2010 WL 2450117, at *4. Further, the *Castorina* court noted that the jury in that case found that the defendant possessed or used dangerous drugs, which the jury specifically identified in its jury verdict. *Id.*, at *7.

As to *Madrid-Farfan v. Sessions*, 729 F. App'x 621, 622 (9th Cir. 2018), that unpublished case does not even cite to *Salinas*, despite citing to *Castorina*. Again, it appears the Ninth Circuit moved on to the second step of divisibility, necessarily finding that there is no controlling Arizona case instructive on this issue. Instead, the court relies relies upon "*[State v.] Prescott, Castorina*, and the Arizona model jury instructions" to find that A.R.S. section 13-3408 is indivisible. *Id.* While *State v. Prescott*, No. 1 CA-CR 15-0188, 2016 WL 611656, at *2 (Ariz. Ct. App. Feb. 16, 2016), another unpublished case, states that "It is clear from the statutes that possession or sale of a dangerous drug is one crime, regardless of whether the drug possessed or sold is methamphetamine, MDMA, or any other substance the statutes define as a dangerous drug," *Castorina* supports the contrary. The *Castorina* court specifically noted that "the trial court's instructions went beyond the requirement of the statutes by instructing the jury that it had to find that the state had proved the defendant knew he possessed the actual named drug in each count," which the jury did, and the court upheld. 2010 WL 2450117, at *7. Each count listed there was attributable to a different drug. *Id.*

This issue is further complicated by the split in the Ninth Circuit and varying unpublished case law, as evidenced by the cases both parties cite to for their opposing propositions. *See Gonzalez-Dominguez v. Sessions*, 743 F. App'x 808, 811 (9th Cir. 2018), *amended on denial of reh'g* (Sept. 27, 2018) (unpublished) (establishing that controlling state law is not definitive here, nor is the case law authoritative or in agreement).

As to the Arizona Jury Instructions' persuasiveness, the Court notes that a "dangerous drug" is defined in 13-3401, and it is undisputed that the state must prove that

5

the substance at issue was, in fact, a dangerous drug. Therefore, it seems difficult to imagine how the state would be able to prove the existence of the substance without identifying the particular drug and proving it is one that is enumerated in 13-3401, which was evidenced in *Castorina*. The Court acknowledges, though, that an Arizona jury is not required to find that a specific drug was possessed, sold, etc. *See* RAJI (Criminal) 34.071, 34.0771 (4th ed.); *Castorina*, 2010 WL 2450117, at *7 (noting that "the trial court's instructions went beyond the requirement of the statutes by instructing the jury that it had to find that the state had proved the defendant knew he possessed the actual named drug in each count."). However, like the Ninth Circuit noted in *Gonzalez-Dominguez*, the Arizona Jury instructions are persuasive and not authoritative. 743 F. App'x at 811.

Thus, because there is "no clear answer[] as to the divisibility of [the] statute," the Court will consider Defendant's conviction documents under the modified categorical approach. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). Defendant is correct in that his plea agreement and sentencing transcript do not state which drug he was involved with in this case. However, though the Indictment was "amended" by Defendant's plea agreement, the Court may peek at his conviction documents. To be sure, the Court is simply looking to the documents "to determine which statutory phrase was the basis for the conviction." *Descamps*, 570 U.S. at 263 (quoting *Johnson v. United States*, 559 U.S. 133, 144 (2010)) (internal quotations omitted). Here, the reference is to methamphetamine and no other drug. Additionally, none of the counts, as described in the Indictment nor in the plea agreement or at sentencing, referenced the charges as "sale of methamphetamine" or "possession of methamphetamine for sale" nor ever used the subsections of A.R.S. section 13-3407. (*Compare* Doc. 12-3 at 3, 12-5 at 3, 12-6 at 2, showing "Sale of Dangerous Drugs" and "Attempted Possession of Dangerous Drugs for Sale" *with* Doc. 14-1 at 2, 7 showing "Sale or Transportation of Dangerous Drugs" and "Possession of Dangerous Drugs for Sale" and not using any subsections.) Thus, it is unremarkable that the plea agreement does not list the charges against Defendant in that manner.

Therefore, the Court finds that this offense is a controlled substance offense under

the federal definition in 8 U.S.C. section 1101(a)(43)(B) and, thus, Defendant committed aggravated felonies under 8 U.S.C. section 1227(a)(2)(A)(iii) and was removable as charged. As such, he has not been prejudiced and cannot meet his burden to collaterally attack.

**IV.  Conclusion**

Accordingly, for the reasons state above, Defendant's Motion to Dismiss (Doc. 12) is **denied**.

Dated this 16th day of August, 2019.

                                              Honorable Steven P. Logan
                                              United States District Judge